UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| ADVOCARE INTERNATIONAL, LLC, ET AL. | § § § |
| v. | §   CIVIL NO. 4:22-CV-900-SDJ |
| CRYSTAL LYNN SMITH, A/K/A CRYSTAL SEIBERT, ET AL. | § § § § |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion for Sanctions and to Compel Supplementation of Defendants' Initial Disclosures and Discovery Responses, (Dkt. #36), and Plaintiffs' Motion to Continue Deadlines to Add Parties and for Plaintiffs and Defendants to Amend Pleadings, (Dkt. #38). Having considered the motions, the briefing, and the applicable law, the Court concludes that Plaintiffs' motion to compel and motion to continue deadlines should be **GRANTED**. Plaintiffs' motion for sanctions is taken under advisement.

### I. BACKGROUND

### A. AdvoCare's Complaint and Defendants' Initial Representations

Plaintiffs AdvoCare International, LLC and CERPUR Pioneer, LLC (collectively, "AdvoCare" or "Plaintiffs") brought this suit against Defendants Crystal Lynn Smith, Deborah Ayers, (collectively, "Defendants") and John Does 1–10 for trademark infringement, unfair competition, and tortious interference with contracts. These claims stem from Defendants' alleged sale of infringing products bearing AdvoCare's trademarks. According to AdvoCare, Defendants sold these

1

products on Amazon Storefronts ("Storefronts"), Amazon.com platforms where businesses can advertise and sell products over the internet.

AdvoCare manufactures and sells weight management, energy and fitness, and personal care products. In addition to selling its products on its own website, AdvoCare also authorizes independent contractors, known as "Independent Distributors," to sell its products. An individual interested in becoming an Independent Distributor must apply to AdvoCare. Independent Distributors are contractually authorized to sell AdvoCare products through certain channels. Storefronts are not authorized channels.

AdvoCare alleges that Smith and Ayers—who are former Independent Distributors—have sold large quantities of AdvoCare products through three different Storefronts. According to AdvoCare, Smith operates and sells these allegedly infringing products through the "Vermillion Supplements" and "Renewed Foci" Storefronts, and Ayers operates and sells allegedly infringing products through the "Greens N' Finer Things" Storefront. AdvoCare terminated its Independent Distributor contracts with Ayers and Smith in October of 2018 after they continued to sell allegedly infringing goods on the Storefronts despite receiving cease-and-desist letters from Advocare. According to AdvoCare, Smith and Ayers have sold and continue to sell "an extremely high volume of products bearing the Advocare Trademarks through their Amazon Storefronts." (Dkt. #1 ¶ 76). AdvoCare asks the Court to enjoin Defendants from, inter alia, selling allegedly infringing products and to award AdvoCare damages for the harm caused by the sale of the products.

Although Smith and Ayers have denied any wrongdoing, they admitted to many of AdvoCare's allegations in their Amended Answer, initial disclosures, and the parties' Joint Report. The following admissions are of particular importance here:

- Smith admitted to operating the Storefronts at issue, (Dkt. #19 ¶ 3);

- Both defendants admitted that their information was available on the Storefronts "as required of all Amazon storefront operators," (Dkt. #19 ¶ 61);

- Defendants did not deny that they continued to sell AdvoCare products on the Storefronts even after receiving AdvoCare's cease-and-desist letters; they further stated that they were "authorized distributors of Plaintiffs' products, and as such were trained, informed and experienced in the sale, distribution and use [of] Plaintiffs' products, to include distinguishing 'materially different' products," (Dkt. #19 ¶ 63);

- Defendants did not deny that they periodically sell AdvoCare products on the Storefronts at issue in this case; they further stated that "Plaintiff has correctly asserted that . . . Defendants have sold AdvoCare products," (Dkt. #19 ¶ 65);

- Defendants admitted to changing the names of "their storefronts for purposes of marketability," (Dkt. #19 ¶ 71);

- Defendants stated that they "only sell AdvoCare products that comport with the training and information provided to them by Plaintiffs," (Dkt. # 19 ¶¶ 67, 79, 81, 82);

- In their initial disclosures, Defendants stated that they "have already, and only, admitted to the ownership of the Amazon Storefronts at issues [sic] in this case," (Dkt. #36-2 at 3);

- In their Joint Report, Defendants indicated that they have AdvoCare products in their possession, (Dkt. #25 at 4); and

- Defendants stated that they "do not assert that either Defendant was wrongfully named or not responsible for the sales of products alleged in Plaintiffs' complaint," (Dkt. #25 at 8).

**B. Defendants' Discovery Disclosures and Depositions**

Early on in this case, the parties brought discovery disputes to the Court's attention. During the Court's Rule 16 Conference with the parties, AdvoCare informed the Court that Defendants' initial disclosures were deficient. Specifically, AdvoCare asserted that Defendants failed to produce records and other relevant items that they had in their possession, in violation of Rule 26(a)(1) and the Court's Order Governing Proceedings.

For their part, Smith and Ayers stipulated to being deposed by AdvoCare regarding AdvoCare's challenges to the adequacy of Defendants' disclosures. Defendants also responded to AdvoCare's interrogatories and requests for admission. In their discovery disclosures and depositions, Defendants made the following representations, each of which, on its face, directly contradicts Defendants' admissions in their Amended Answer and their statements in their initial disclosures and the Joint Report:

- Defendants "do not, and have not ever, had access to the Amazon Storefronts at issue in this case in any way. Defendants are 'operators' of two Amazon Storefronts in name only," (Dkt. #36-8 at 7);

- "Defendants' do not and have not ever owned or 'operated'" a Storefront, and "[a]s such, Defendants are unaware of any name changes to these Amazon Storefronts," (Dkt. #36-8 at 6);

- "Defendants have never sold AdvoCare products, solicited the sale of AdvoCare products, or solicited AdvoCare distributors to provide them any AdvoCare products," (Dkt. #36-7 at 6);

- Defendants are not in possession of any AdvoCare products; (Dkt. #36-9 at 71; #36-10 at 90);

- Ayers testified that she has never given her name or address to Amazon to be listed on a Storefront, (Dkt. #36-9 at 28);

4

- Ayers testified that, to her knowledge, no one has ever provided her name to Amazon, and that her name only appeared on the Storefronts at issue because of a "scam or something," (Dkt. #36-9 at 28–29);

- Ayers testified that she "didn't know what an Amazon storefront was," (Dkt. #36-9 at 37);

- Ayers testified that she did not change the name of any Storefront because she "was never involved in the storefront," (Dkt. #36-9 at 60);

- Ayers testified that she "never sold any AdvoCare [product]," "never used them," and "never sold them out of a storefront," (Dkt. #36-9 at 76);

- Ayers testified that she has never "sold an AdvoCare product anywhere or to anyone" "at any point in time," (Dkt. #36-9 at 20, 22);

- Ayers testified that she was not aware that her name was listed on a Storefront until approximately April of 2023, (Dkt. #36-9 at 40);

- Smith testified that she first learned that a Storefront was listing her information approximately one week before her July 14, 2023, deposition, (Dkt. #36-10 at 29–30)—even though her Amended Answer was filed April 6, 2023;

- Smith testified that she did not have "any role" or "any involvement" in the Storefronts, and that she "never had access to the storefront accounts," (Dkt. #36-10 at 41);

- Smith testified that she only admitted to being an operator of the Storefronts because her name appeared—without her knowledge—on the Storefronts, (Dkt. #36-10 at 42);

- Smith testified that she has never "participated in the sale of AdvoCare products on the Amazon storefronts at issue in this case," nor has she "participated in the sale of AdvoCare products sold anywhere else," (Dkt. #36-10 at 39–40); and

- Smith testified that she has never sold an AdvoCare product to anyone, (Dkt. #36-10 at 71).

5

**C. AdvoCare's Motions**

In light of the irreconcilable differences between Defendants' Amended Answer and their other initial representations, and their discovery responses, AdvoCare has moved the Court to sanction Defendants and to compel supplementation of Defendants' initial disclosures and discovery responses.[1] (Dkt. #36). AdvoCare also moved to continue the deadlines for AdvoCare to add additional parties and for both AdvoCare and Defendants to amend pleadings. (Dkt. #38). Defendants oppose both motions, arguing that they have been truthful and consistent in all their admissions, disclosures, and responses.

## II. LEGAL STANDARD

Several Federal Rules of Civil Procedure work together to govern the discovery process. Among these rules, Rule 26 requires parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A)(i). Rules 30, 33, and 36 govern oral depositions, interrogatories, and requests for admission, respectively. Each party has a duty to "supplement or correct" these materials if it later discovers that any are "incomplete or incorrect." FED. R.

---

[1] AdvoCare also moved to expedite the briefing schedule and requested an oral hearing on its motion for sanctions and to compel. (Dkt. #37). The Court granted the motion in part, expediting the briefing schedule but not setting an oral hearing. (Dkt. #44).

6

CIV. P. 26(e). Further, courts treat an "incomplete disclosure, answer, or response" as a "failure to disclose, answer, or respond." FED. R. CIV. P. 37(a).

If a party fails to obey the rules of discovery, the other party can move the court to issue an order to compel disclosure or discovery and for sanctions. FED. R. CIV. P. 37; *see also Bradley v. United States*, 866 F.2d 120, 124 (5th Cir. 1989) ("[T]he power of a trial court to impose sanctions for rule 26(e)(1) violations has been repeatedly confirmed by this court and others.").

In general, if a court grants a motion to compel, the court must also "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A).

### III. DISCUSSION

The Court finds that Defendants failed to comply with the rules governing discovery in various ways. Specifically, the Court finds that: (1) Defendants failed to amend or supplement discovery responses that directly contradict their prior admissions in this case, such that their responses on key issues in the case are in irreconcilable conflict and confusing; and (2) Defendants withheld relevant discoverable information known about Dustin Seibert based on a meritless claim of attorney-client privilege. Therefore, the Court orders Defendants to amend or supplement their initial disclosures and discovery responses. The Court also finds

7

that deadlines should be stayed until a reasonable time has passed so that Plaintiffs can analyze the supplemental or amended information.

## A. Defendants Have Provided Plaintiffs with Contradictory and Incompatible Responses.

As illustrated below, Ayers and Smith have reversed course on several of their positions throughout this proceeding. Because of these discrepancies, AdvoCare has been unable to determine which party is behind the Storefronts and potentially liable for allegedly selling infringing goods. Without detailing every instance of Defendants' conflicting answers and responses, the Court finds that the following examples are sufficient to warrant requiring Defendants to amend or supplement their initial disclosures and discovery responses.

### i. Defendants gave contradictory responses regarding their involvement with the Storefronts.

The controversy in this suit concerns the sale of products bearing AdvoCare's trademarks on several Storefronts. In their Amended Answer, Defendants expressly acknowledged their involvement, though they denied any legal wrongdoing. For example, Smith admitted that she "does operate the Amazon storefronts" at issue here. (Dkt. #19 ¶ 3). Defendants also admitted that their "information was readily available on the Amazon storefront site (as required of all Amazon storefront operators)." (Dkt. #19 ¶ 61). They further admitted that they "have changed the names of *their* storefronts for purposes of marketability." (Dkt. #19 ¶ 71) (emphasis added). And in their initial disclosures, Defendants stated that they "have already, and only, admitted to the ownership of the Amazon Storefronts at issues [sic] in this case." (Dkt. #36-2 at 3).

In short, in their Amended Answer and initial disclosures, Smith and Ayers unmistakably claimed ownership and control over the Storefronts in dispute. But at their depositions and in their responses to AdvoCare's discovery requests, Smith and Ayers told a completely different story. Notwithstanding her prior admissions to the contrary, Ayers asserted in her deposition that she has never "given [her] name and address to Amazon to be listed on an Amazon storefront," that no one has ever provided her name and address to Amazon, and that the only reason her information was found on the Storefront was because of a "scam or something." (Dkt. #36-9 at 28–29). Ayers further testified that she "didn't know what an Amazon storefront was," (Dkt. #36-9 at 37), and claimed that she was not aware that her name was listed on a Storefront until approximately April of 2023, (Dkt. #36-9 at 40), when her Amended Answer was filed. And, in further, direct contradiction to her Amended Answer, Ayers testified that she "did not change [the name of] any storefront" because she "was never involved in the storefront." (Dkt. #36-9 at 60).

Smith likewise contradicted her admissions in the Amended Answer. She testified that she only learned that her address was listed on a Storefront approximately one week before her July 14, 2023, deposition, (Dkt. #36-10 at 29–30), even though her Amended Answer—in which she admitted to operating the Storefront—was filed on April 6, 2023. Smith further testified that she did not have "any role" or "any involvement" in the Storefronts at issue and that she "never had access to the storefront accounts." (Dkt. #36-10 at 41). She claimed that she only admitting to "operating" the Storefronts in her Amended Answer because her name

9

appeared—without her knowledge—on the Storefronts. (Dkt. #36-10 at 42). And in their response to an interrogatory, Defendants asserted that they "do not, and have not ever, had access to the Amazon Storefronts at issue in this case in any way. Defendants are 'operators' of these Amazon Storefronts in name only." (Dkt. #36-8 at 7). They also asserted that they "do not and have not ever owned or 'operated'" a Storefront, and "[a]s such, are unaware of any name changes to these Amazon Storefronts." (Dkt. #36-8 at 6).

### ii. Defendants gave contradictory responses regarding their sale and possession of AdvoCare products.

In addition to admitting that they owned and operated the Storefronts, Defendants also originally admitted to possessing and selling AdvoCare products. AdvoCare alleged that "[i]n the weeks after Smith and Ayers received AdvoCare's [cease-and-desist] letters, Defendants did not cease their sales on Amazon. AdvoCare also discovered that Smith and Ayers had entered into contracts with AdvoCare and were active AdvoCare Independent Distributors." (Dkt. #1 ¶ 63). In their Amended Answer, Defendants responded to this allegation as follows: "Admit, with qualification. Defendants were authorized distributors of Plaintiffs' products, and as such were trained, informed and experienced in the sale, distribution and use [of] Plaintiffs' products, to include distinguishing 'materially different' products." (Dkt. #19 ¶ 63). Notably, Defendants did not deny the part of the allegation that accused them of continuing to sell AdvoCare products on the Storefronts even after they received cease-and-desist letters. They likewise did not deny an allegation that they periodically sell AdvoCare products on the Storefronts at issue in this case. *See*

(Dkt. #19 ¶ 65). Thus, Defendants effectively admitted to these charges. *See* FED. R. CIV. P. 8(b)(4) ("A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest."); FED. R. CIV. P. 8(b)(6) ("An allegation . . . is admitted if . . . the allegation is not denied.").

Further, Defendants stated that AdvoCare "has correctly asserted . . . that Defendants have sold AdvoCare products," (Dkt. #19 ¶ 65), and that they "only sell AdvoCare products that comport with the training and information provided to them by Plaintiffs," (Dkt. #19 ¶¶ 67, 79, 81, 82). Defendants also confirmed that they "do not assert that either Defendant was wrongfully named or not responsible for the sales of products alleged in Plaintiffs' complaint." (Dkt. #25 at 8). And in their Joint Report, Defendants stated that "Plaintiffs can not [sic] support beyond pure speculation (nor could it [sic]) that the products *in Defendants possession* are counterfeit or are other than the genuine goods Plaintiffs have produced, packaged, bottled and labeled," (Dkt. #25 at 4) (emphasis added), thereby indicating that they currently possess AdvoCare products.

But in their depositions and responses to discovery requests, Ayers and Smith claimed that they *have never* sold AdvoCare products and *do not* possess AdvoCare products. Defendants further asserted in a response to an interrogatory that they "have never sold AdvoCare products, solicited the sale of AdvoCare products, or solicited AdvoCare distributors to provide them any AdvoCare products." (Dkt. #36-7 at 6). Ayers testified that she has never "sold an AdvoCare product anywhere or to anyone" "at any point in time." (Dkt. #36-9 at 20, 22). She further testified that she

11

"never sold any AdvoCare [product]," "never used them," and "never sold them out of a storefront." (Dkt. #36-9 at 76). And in her deposition, Smith testified that she has never "participated in the sale of AdvoCare products" either on the Storefronts or "anywhere else." (Dkt. #36-10 at 39–40). When asked if she "ha[s] ever sold AdvoCare products to anyone," Smith responded "[n]o." (Dkt. #36-10 at 71). Finally, Defendants claimed that they are not in possession of any AdvoCare products, (Dkt. #36-9 at 71; #36-10 at 90), only that they have possessed them in the past.

### iii. Defendants are required to amend or supplement their initial disclosures and discovery responses.

Despite all these clear (and unexhausted) examples of direct, irreconcilable contradictions, Defendants claim that they "have been truthful in their responses under Rule 26" and that they "never alleged [they] owned or operated" the Storefronts. (Dkt. #46 at 1). Defendants assert that their answers "*never admitted* to owning the Amazon Storefronts [or] controlling the Amazon Storefronts," (Dkt. #46 at 3). This statement is simply untrue and demonstrates a troubling lack of candor to the Court. As described herein, Defendants unequivocally admitted to operating the Storefronts, selling products through the Storefronts, and changing the name of the Storefronts to "improve marketability." *See supra* Sections III.A.i–ii. Defendants then attempted to undo these admissions through subsequent and directly contradictory discovery responses.[2]

---

[2] Again, Defendants specifically attested in their Joint Report that they "do not assert that either Defendant was wrongfully named or not responsible for the sales of products alleged in Plaintiffs' complaint." (Dkt. #25 at 8).

12

To say that Defendants have some explaining to do is an understatement. Defendants must supplement and/or amend their responses to interrogatories, explaining in detail and clarifying each and every discrepancy and contradiction between the express admissions in their Amended Answer, initial disclosures, and in the parties' Joint Report, and Defendants' subsequent, irreconcilable discovery responses. Failure to do so completely and accurately may subject Defendants to sanctions for failure to comply with this Court's orders. The Court will consider Defendants' pending request to amend their answer yet again only after Defendants fully comply with this order.

## B. Defendants Failed to Provide Discoverable Information About Dustin Seibert.

In its Order Governing Proceedings, the Court ordered each party to include in their initial disclosures (1) "[t]he name and, if known, address and telephone number of any potential parties to the action," and (2) "[t]he name and, if known, the address and telephone number of persons having knowledge of facts relevant to the claim or defense of any party, a brief characterization of their connection to the case, and a fair summary of the substance of the information known by such person." (Dkt. #21 at 4); *see also* FED. R. CIV. P. 26(a)(1)(A)(i).

In their initial disclosures, Defendants did not identify any potential parties. However, they did name Dustin Seibert as a "person[] having knowledge of relevant facts." (Dkt. #36-2 at 3). Specifically, they asserted that Dustin Seibert "may have

13

discoverable information regarding Defendants' possession of AdvoCare products."[3] (Dkt. #36-2 at 3). In response to an interrogatory, Defendants claimed that "Dustin Seibert is the only person Defendants are aware of that has access to any of the Amazon storefronts named in the Complaint in this case. The extent of Dustin Seibert's knowledge about the sale of AdvoCare products on the Amazon Storefront platforms at issue here is unclear."[4] (Dkt. #36-7 at 6).

According to Defendants' testimonies, Seibert sent AdvoCare products to Ayers and Smith's homes and instructed them to attach new labels to the products, labels that were apparently identical to those already on the products.[5] (Dkt. #36-9 at 77–78; #36-10 at 90–99). Defendants complied with Seibert's instructions, but they testified that they do not know why Seibert asked them to perform this odd task. When asked to expound upon their assertion that Seibert may have more information about the Storefronts, Defendants claimed that such information was protected by attorney-client privilege. (Dkt. #36-9 at 40 ("Q: How are you aware that Dustin

---

[3] Although Defendants here appear to admit that they presently possess AdvoCare products, they later claim that they are not in possession of any AdvoCare products, (Dkt. #36-9 at 71; #36-10 at 90), only that they have possessed them in the past.

[4] Responding to Interrogatory #1: "Identify all Persons with knowledge of facts relating to the claims and allegations against You in this Lawsuit and Your defenses to the claims and allegations, and for each Person identified state a brief description of each such Person's relevant knowledge." (Dkt. #36-7 at 6). Defendants did not name themselves.

[5] In their depositions, Defendants aver that the only time they have ever possessed AdvoCare products was when Seibert sent the products to their houses. Ayers answered in the affirmative when asked "[s]o just to be clear, you've said that you never possessed an Advocare product," (Dkt. #36-9 at 72), but she later claimed that she "possessed [AdvoCare products] through Dustin [Seibert]," (Dkt. #36-9 at 76). Likewise, Smith first testified that she "never" possessed AdvoCare products "in any way," (Dkt. #36-10 at 80–81), but then later testified that she had possessed AdvoCare products that were given to her by Seibert, (Dkt. #36-10 at 90).

14

Seibert has access to the Amazon Storefronts?" Counsel: "That's attorney/client privilege.")); #36-10 at 85–89 ("Q: [Y]ou don't know why Dustin [Seibert] would know anything about this case?" Counsel: "Call for privileged information with attorney.")). In the depositions, counsel for the Defendants argued that the privilege protected the requested information because he "has done his own research, has done his own investigations and had communications with his clients." (Dkt. #36-9 at 41); *see also* (Dkt. #36-10 at 87 (arguing that the privilege applied because "[Smith] testified that she did not . . . investigate this claim or have any idea what was going on until a week ago when she spoke with her attorney. So I think she's indicated what she's learned about this case she learned from her attorney.")).

Counsel's assertion of the attorney-client privilege is misguided. "[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communications from a lawyer to the client, at least if they would tend to disclose the client's confidential communications." *Blum v. Spectrum Rest. Grp.-Emps. Grp. Life & Supp. Life Plan*, Nos. 4:02-CV-92, 4:02-CV-98, 2003 WL 367059, at *2 (E.D. Tex. Feb. 18, 2003) (quoting *Hodges, Grant, & Kaufmann v. United States*, 768 F.2d 719, 720–21 (5th Cir. 1985)). But the privilege "does not protect underlying facts." *Id.* at *2 n.1 (citations omitted); *see also Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) ("[T]he attorney-client privilege 'only protects disclosures of communications; it does not protect disclosure of the underlying facts.'" (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)));

15

*B.C.F. Oil Refin., Inc. v. Consol. Edison Co. of N.Y., Inc.*, 168 F.R.D. 161, 165 (S.D.N.Y. 1996) ("[T]he attorney-client privilege simply does not extend to facts known to a party that are central to that party's claims, even if such facts came to be known through communications with counsel who had obtained knowledge of those facts through an investigation into the underlying dispute.").

Defendants were asked about the underlying facts regarding their knowledge of Seibert's involvement with the Storefronts—not confidential communications that they had with their attorney. Defendants cannot conceal discoverable information merely because counsel conducted an investigation and relayed his findings to them. As the case law makes clear, underlying facts are not privileged, and an attorney cannot prevent disclosure by communicating the facts with his client and labeling it "confidential communications." Thus, any information Defendants have regarding Seibert's involvement with and knowledge of the Storefronts is not protected by the attorney-client privilege—even if Defendants only learned that information through communications with their attorney.

Further, when asked whether she had "ever discussed this case with both Dustin [Seibert] and [her] counsel," Smith answered "[y]es . . . when me and my lawyer were going over it." (Dkt. #36-10 at 88). It appears that Smith is stating that her counsel informed her about Seibert's involvement with the Storefronts with Seibert present. If true, any claim to confidentiality was waived. *See Hodges, Grant & Kaufmann*, 768 F.2d at 721 ("Because the privilege protects only confidential communications, the presence of a third person while such communications are made

16

or the disclosure of an otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests."). Seibert is not a defendant in this case, but only a third party.[6] Thus, counsel's apparent disclosure of information in Seibert's presence "eliminates the intent for confidentiality," and thus waives any attorney-client privilege that *could* exist over the information. *See id.*

Defendants fail to respond to any of this authority. In fact, Defendants offer *no* legal support for their assertion of privilege. Instead, Defendants double-down on their claim that the underlying facts regarding Seibert are privileged, and they assert that the objection was made "in good faith." (Dkt. #46 at 9–10). Defendants further claim that they have been forthright in their disclosures and responses to interrogatories, and that their characterizations regarding Seibert's knowledge of and involvement with the Storefronts remain accurate. (Dkt. #46 at 10–11). Not so.

First, as illustrated above, Defendants have not been entirely forthright, as they have provided directly contradictory and irreconcilable responses throughout this proceeding. Second, Ayers's and Smith's answers in their depositions indicate that they have additional and relevant information about Seibert, but they refused

---

[6] The Court notes that the privilege is not waived if the "communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication." *Hodges, Grant & Kaufmann*, 768 F.2d at 721. This exception "extends the attorney-client privilege to communications prompted by threatened or actual civil or criminal proceedings and intended to facilitate representation between potential co-defendants with a common legal interest and their counsel." *Autobytel, Inc. v. Dealix Corp.*, 455 F.Supp.2d 569, 576 (E.D. Tex. 2006). But this exception does not apply here because there were no "threatened or actual civil" proceedings against Seibert, and Defendants clearly do not believe that Seibert is a "potential co-defendant." *See* (Dkt. #36-2 at 2 (failing to identify any potential parties to this case)).

17

to provide that information based on a meritless assertion of attorney-client privilege. Accordingly, the Court orders Defendants to amend or supplement their discovery responses and initial disclosures with the underlying facts and other discoverable information in their possession regarding Seibert's knowledge of and involvement with the Storefronts at issue here.

### C. Deadlines Will Be Continued.

Together with its motion for sanctions and to compel, AdvoCare also moved to continue deadlines to add parties and to amend pleadings. (Dkt. #38). AdvoCare argues that deadlines should be stayed until a reasonable time after the Court's ruling on the other motions so that AdvoCare has sufficient time to review Defendants' amendments or supplementations. Because the Court grants AdvoCare's motion to compel, the Court finds that AdvoCare's motion to continue deadlines should also be granted. The Court will stay all deadlines in this case.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Sanctions and to Compel Supplementation of Defendants' Initial Disclosures and Discovery Responses, (Dkt. #36), is **GRANTED**. However, the Court declines to consider the portions of the motion that requests sanctions, and instead takes them under advisement at this time. It is therefore **ORDERED** as follows:

1. Defendants' assertions of attorney-client privilege concerning information about Dustin Seibert's knowledge of and involvement with the Storefronts are **OVERRULED**;

2. Within **fourteen days** of this Order, Defendants must amend and/or supplement their Rule 26(a)(1) initial disclosures in compliance with this Order and the Federal Rules of Civil Procedure;

3. Within **fourteen days** of this Order, Defendants must amend and/or supplement their responses to Plaintiffs' interrogatories so as to explain in detail and clarify each and every discrepancy and contradiction between the express admissions in their Amended Answer and initial disclosures, as well as the parties' Joint Report, and their subsequent, irreconcilable discovery responses;

4. Within **fourteen days** of this Order, Defendants must amend and/or supplement their initial disclosures and their responses to Plaintiffs' interrogatories with all relevant information about Dustin Seibert's knowledge of and involvement with the Storefronts, as well as his contact information as required by Rule 26 and the Court's Order Governing Proceedings; and

5. Within **thirty days** of this Order, Plaintiffs must file for an award of its reasonable expenses and attorney's fees incurred in taking the depositions of Ayers and Smith and in making its motion to compel, as required by Rule 37(a)(5)(A). Defendants' response shall be due **fourteen days** from the date on which the application is filed. Plaintiffs' reply, if any, shall be due **seven days** from the date on which Defendants' response is filed.

It is further **ORDERED** that Plaintiffs' Motion to Continue Deadlines, (Dkt. #38), is **GRANTED**. All deadlines are hereby **STAYED** pending further order of the Court. Accordingly, Plaintiffs' Motion to Continue Case Deadlines and Events,

19

(Dkt. #56), is **DENIED as moot**. The Court will enter an amended scheduling order once the various discovery issues discussed in this Order are resolved.

The Court further notes that it will not consider Defendants' Motion to Amend Answers, (Dkt. #50), until the discovery issues discussed in this Order are resolved and Defendants have fully complied with this Order.

**So ORDERED and SIGNED this 13th day of December, 2023.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE